No. 91-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

MICHAEL THOMAS STEWART,

Defendant and Appellant.

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Martin R. Studer argued, Attorney at Law, Bozeman,
Montana
James H. Goetz, Goetz, Madden & Dunn, Bozeman,
Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Micheal Wellenstein argued, Assistant Attorney
General, Helena, Montana
Scott B. Spencer, County Attorney, Libby, Montana

JUN 2 3 1992
JUN 2 3 1992

Filed: COUR
S. OF MONTANA

Submitted: May 4, 1992

Decided: June 23, 1992

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

A jury from the Nineteenth Judicial District Court, Lincoln County, convicted the defendant, Michael Thomas Stewart (Stewart) of theft, attempted theft, and forgery. Stewart appeals. We affirm in part and reverse in part.

The issues raised for review are restated as follows:

(1) Did the District Court abuse its discretion by limiting the scope of Stewart's cross-examination of Mitchell Hicks (Hicks)?

(2) Did the District Court prejudice Stewart's defense by excluding testimony offered by Arlene Peterson (Peterson) to impeach Hicks?

(3) Did the District Court abuse its discretion by allowing the State to introduce a previously undisclosed tape-recording to impeach Roger Kensler (Kensler) on rebuttal?

(4) Was Stewart denied his right to effective assistance of counsel?

Stewart, former police chief of Troy, Montana, was convicted on three separate charges; theft, attempted theft and forgery. The theft charge in this case involves Stewart's attempt to obtain clear title on a 1978 Ford Bronco by depriving the Federal Deposit Insurance Corporation (FDIC) of its lien on the vehicle. The count of attempted theft arises from Stewart submitting a fraudulent claim to the Highway Department for window damage to the Bronco which he alleged occurred in a highway construction area. Finally, the forgery count is based on Stewart signing Hicks' name on a statement Stewart submitted to the Highway Department in connection

with the fraudulent window damage claim.

In 1985, Stewart financed a 1978 Ford Bronco through the Yellowstone State Bank of Lander, Wyoming. When the Yellowstone State Bank failed, the FDIC succeeded to the ownership of the lien on Stewart's Bronco. At trial, Tom Bales (Bales), owner of Bales Auto Acres of Lander, Wyoming, testified that he agreed to assist Stewart in improperly obtaining clear title to the vehicle. Although Bales admitted he never stored the vehicle; in November 1989, he falsified a storage bill, and filed a storage lien on the Bronco. Because the lien exceeded the value of the vehicle, FDIC released its lien on the Bronco. Bales received a clear certificate of title, and transferred title to Hicks. Hicks then transferred title to Stewart at Stewart's request.

Hicks testified that he never negotiated with Stewart for the purchase of the vehicle. In addition, Hicks testified he had no knowledge that Bales placed the title in his name until Stewart came to Hicks and directed him to transfer the document into Stewart's name.

Next, the State presented evidence that Stewart submitted a false claim to the Highway Department in November 1989. Stewart claimed a rock struck the vehicle's rear window as he drove the Bronco on Highway 2 below a construction blast area. Stewart stated that Hicks was a passenger in the Bronco at the time the rock struck the vehicle. At trial, Stewart maintained his story that a rock from the blast area had cracked the vehicle's window. However, he testified the damage actually occurred in June or July

3

1989, not November 1989.

Hicks, on the other hand, testified that no damage ever occurred to the vehicle while he was a passenger; and that the vehicle's window was already broken in May 1989, when Hicks first met Stewart. In addition, Hicks testified that in a previous conversation, Stewart had stated that the construction on Highway 2 presented a prime opportunity for submitting a false claim to the Highway Department.

Finally, the State presented evidence that Stewart forged Hicks' name on a statement he submitted to the Highway Department in connection with the glass damage claim. Stewart testified that he signed Hicks' name to the statement with Hicks' permission. Hicks denied giving Stewart permission to write his signature on the statement.

I

Did the District Court deny Stewart's right to confrontation and abuse its discretion by limiting the scope of Stewart's cross-examination of Mitchell Hicks?

Hicks, a former reserve law enforcement officer in Troy, Montana, disclosed information to the Lincoln County Sheriff's Department which led to Stewart's arrest. Thereafter, Roger Kensler, Mayor of Troy, suspended Hicks. Consequently, Hicks brought a wrongful discharge suit against the city.

At trial, the District Court denied Stewart's attempt to introduce the details of this wrongful discharge suit. Stewart contends this lawsuit established bias and motive for Hicks to

4

fabricate his testimony. Thus, the court improperly limited his cross-examination.

Admissibility of evidence is within the sound discretion of the trial court and will not be reversed absent abuse of discretion. State v. Hall (1990), 244 Mont. 161, 169, 797 P.2d 183, 188. While evidence establishing bias or a witness's motive to fabricate is properly admissible; here, the lower court determined evidence of a separate civil action between Hicks and the city established neither bias nor motive to fabricate. Stewart has failed to persuade this Court that the District Court abused its discretion.

Next, Stewart claims this restriction on cross-examination denied him his right to confrontation guaranteed by the Sixth Amendment to the United States Constitution, and Article II, Section 24 of the Montana Constitution. This Court has previously held that limiting the scope of cross-examination does not necessarily violate an accused's right to confrontation. Sloan v. State (1989), 236 Mont. 100, 104-105, 768 P.2d 1365, 1368. Here, we conclude the court properly restricted Stewart's cross-examination of Hicks based on the limited probative value of the testimony.

We hold the District Court did not abuse its discretion or violate Stewart's right to confrontation by limiting Stewart's cross-examination of Hicks.

II

Did the District Court prejudice Stewart's defense by

5

excluding testimony offered by Peterson to impeach Hicks?

Hicks testified that he never negotiated with Stewart to purchase the Bronco, and never authorized Stewart to forge his signature on the damage claim. Further, Hicks testified that he had never discussed either of these matters with Arlene Peterson.

Later during the trial, Stewart called Ms. Peterson to impeach Hicks' testimony. Peterson testified that she had discussed these matters with Hicks, and that Hicks had authorized Stewart to sign his name to the damage claim. However, on the basis of hearsay, the court prohibited Peterson from testifying Hicks had informed her that he was negotiating with Stewart for the purchase of the Bronco. Stewart contends Peterson's testimony was evidence of a prior inconsistent statement by a prosecution witness, and thus proper impeachment. Rule 801(d)(1)(A), M.R.Evid.

The State contends that the court's exclusion of this testimony is harmless error. We disagree. Here, the record reveals that the State's case rested largely on the testimony presented by Hicks. Thus, the lower court's exclusion of testimony presented to impeach Hicks was prejudicial to Stewart's defense and an abuse of discretion.

We hold the exclusion of Peterson's testimony prejudiced Stewart's defense. We reverse on this issue.

III

Did the District Court abuse its discretion by allowing the State to introduce an undisclosed tape-recording for impeaching Kensler on rebuttal?

6

At trial, Roger Kensler denied that Hicks was suspended for disclosing information leading to Stewart's arrest. On rebuttal, the State impeached Kensler's testimony by introducing a previously undisclosed tape-recording. On the tape, Kensler indicated that Hicks was suspended for blowing the whistle on Stewart. Stewart contends the court should have excluded this tape due to the State's failure to disclose the tape prior to trial under § 46-15-322, MCA. Stewart further contends the recording was irrelevant and improperly admitted under Rule 403, M.R.Evid., because its prejudice outweighed any probative value. We disagree.

First, the State did not violate § 46-15-322, MCA, by failing to disclose the tape. Section 46-15-322, MCA (1989), states in part:

> . . . , the prosecutor shall make available to the defendant . . . the following material and information within his possession or control:
> (a) a list of the names and addresses of all persons whom the prosecutor intends to call as witnesses in the case-in-chief, together with their relevant written or recorded statements; . . .

Here the tape recording was used to impeach testimony of Kensler, a defense witness. Thus § 46-15-322(a), MCA, does not require disclosure. Next, as impeachment evidence, the tape was relevant and probative, although it did not support the criminal charges against Stewart. Finally, the tape did not contain exculpatory evidence which required disclosure under § 46-15-322(e), MCA.

We hold the court did not abuse its discretion in allowing the State to introduce a previously undisclosed tape to impeach Kensler

7

on rebuttal.

IV

Was Stewart denied his right to effective assistance of counsel?

To sustain a claim of ineffective assistance of counsel, defendant must show deficient performance which so far prejudiced the defense that it deprived the defendant of a fair trial. Strickland v. Washington (1984), 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Stewart claims four instances of ineffective assistance of counsel.

First, Wilfred and Faye Palmer, owners of a body shop in Troy, Montana, testified that prior to his negotiations with Bales, Stewart solicited a fraudulent damage estimate from them for the purpose of filing a mechanic's lien on the Bronco. Stewart claims this is "other crimes" evidence. As such his attorney was deficient in failing to object, and its admission deprived Stewart of a fair trial.

Next, Stewart contends defense counsel failed to object when the prosecutor asked Hicks about an alleged sexual relationship between defense witness Loretta Hingley and Stewart. Further, defense counsel failed to object when, without basis, the prosecutor asked Stewart if he abused juveniles during arrest. Stewart claims these comments were highly inflammatory and prejudicial and deprived Stewart of a fair trial.

We disagree. Here, testimony from Wilfred and Faye Palmer was properly admitted, not as evidence of other crimes, but as part of

8

the corpus delicti in Stewart's continuing scheme to defraud the FDIC of its lien on the Bronco. Next, testimony regarding the sexual relationship between Stewart and Hingley was properly admissible to show Hingley's motive to testify falsely. Finally, the prosecutor's question insinuating Stewart abused juveniles in custody was irrelevant to the crimes charged. In all above cited instances, we find that defense counsel's failure to object did not prejudice Stewart's defense, nor deprive Stewart of a fair trial.

The final instance of ineffective assistance of counsel claimed by Stewart involves defense counsel's failure to object to inappropriate remarks made by the prosecutor during closing arguments. A portion of the State's closing argument is set out below:

> And remember, ladies and gentlemen, these sorts of cases are tough. Public officials, which Mike Stewart was, should have the public's highest respect and regard and they shouldn't be doing illegal things. They shouldn't be involved in trying to steal things like and make false claims. They shouldn't be involved in making false claims because more than anything, it destroys the public trust.
> You want a crooked cop, this is a crooked cop and he was caught. And the only way that you, we can stop this is for you to render a proper verdict in this case.
> If you, with the evidence before you, say to this man, you are not guilty, you are saying go out and be a crooked cop, we like crooked cops.
> And the only message that you can say, it is overwhelming that he is that. He is a thief. And he is a liar. And the verdict that you should render on what you have heard in these sorts of cases based on what you have heard here is you are guilty of theft on the Bronco
> . . .
> Mr. Stewart, he is Mr. Stewart, Mr. Stewart, you are a crook. You are guilty. (Emphasis added.)

This Court discussed improper comments by the prosecution in State v. Musgrove (1978), 178 Mont. 162, 582 P.2d 1246. That case

9

involved an interpretation of Disciplinary Rule No. 7-106(C), adopted in 1973. Rule No. 7-106(C)(4) provided in part:

> In appearing in his professional capacity before a court, a lawyer shall not:
>
> (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matter stated herein.

There we held that it is highly improper for a prosecutor to express a personal opinion as to the defendant's guilt or innocence. We stated:

> It is well for attorneys to remember that while in closing argument, they may argue and comment upon the law of the case in the instructions, as well as upon the evidence of the case. . . . [However, that permission is limited.] . . . It is enough to say that in most instances, it is highly improper for an attorney in final argument to characterize the testimony of a witness as lies or the party or a witness himself as a liar.

Musgrove, 178 Mont. at 172, 582 P.2d at 1253. In 1985, subsequent to the Musgrove case, we adopted the present Rules of Professional Conduct. As they apply to this particular question, Rule 3.4 provides in part:

> A lawyer shall not:
> (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, . . . or the guilt or innocence of an accused; . . . (Emphasis supplied.)

We conclude the Rule stated in Musgrove is as viable under the new Rules of Professional Conduct as it was under the old Code of Professional Responsibility. Here, the prosecutor stated his

10

personal opinion on the credibility of the witnesses as well as the guilt of the accused. Clearly this is improper.

Because we are reversing on other grounds, we do not find it necessary to decide whether the statements by the prosecutor were so prejudicial as to deprive Stewart of a fair trial. However, because of the concern by all members of the Court with regard to this type of prejudicial and improper statement, we have carefully reviewed the closing argument. We recognize this case is somewhat unusual in that a great deal of the evidence submitted by the State was directly contradicted by evidence submitted by the defense. It was the task of the jury to determine which testimony and evidence was the more believable. As a result, it undoubtedly was proper for the prosecution to comment on the contradictions and conflicts in the testimony. To that extent, the conduct of the prosecution was appropriate. However, the prosecution went far beyond the boundaries of appropriate comments by the prosecution.

Unfortunately this is not the first case to come before the Court in recent months in which the prosecution has yielded to the temptation to make unfair and prejudicial comments to a jury. We direct this comment to all prosecutors: stop the expression of a personal opinion as to the credibility of a witness or the guilt or innocence of a defendant.

Reversed and remanded for further proceedings consistent with this opinion.

_____
                        Justice

We Concur:

_____
        Chief Justice

11

John Conway Harrison

J.M. Trieweiler

William E. Hunt

R.C. McDonough

Karla M. Gray

Justices

June 23, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


DONALD L. SHAFFER
Attorney at Law
502 Main Street
Libby, MT 59923


James H. Goetz
GOETZ, MADDEN & DUNN
35 N. Grand
Bozeman, MT 59715

Martin R. Studer
Attorney at Law
12 N. Third Ave., Suite, 1
Bozeman, MT 59715

HON. MARC RACICOT, Attorney General
Mike Wellenstein, Assistant
Justice Building
Helena, MT 59620

SCOTT B. SPENCER, Lincoln County Attorney
Lincoln County Courthouse
512 California Avenue
Libby, MT 59923

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy